**IN THE COURT OF APPEALS OF IOWA**

No. 23-1377
Filed July 24, 2024

**IN THE INTEREST OF T.G. and M.G.,**
**Minor Children,**

**SHAYLA L. MCCORMALLY, Custodian,**
        Petitioner-Appellee,

**J.W., Father,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Coleman McAllister,

Judge.

        A father appeals the private termination of his parental rights over his two

daughters under Iowa Code chapter 600A (2023).  **AFFIRMED.**

        J.W., Odgen, self-represented appellant.

        Shayla L. McCormally of McCormally & Cosgrove, P.L.L.C., Des Moines,

self-represented appellee.

        Considered by Badding, P.J., Langholz, J., and Bower, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**LANGHOLZ, Judge.**

This case is not the first time a court has terminated the father's parental rights to two of his children.  Shortly before entering a relationship with the mother of his two daughters involved in this case, the father lost his parental rights to two children with a different mother because he physically abused them.  The father and mother's first daughter was born in June 2021 and suffered neglect from both parents.  A little over a year later, the mother fled to her parents' home, where she still lived when their second daughter was born.  Since the mother left, the father had no contact with the daughters.  Indeed, he never met the second daughter.

After the mother voluntarily released her custody of the daughters, the new custodian petitioned to terminate the father's parental rights.  Because the father did not make any meaningful efforts to visit or financially support his daughters until termination proceedings began and he cannot safely parent his daughters, the district court found that he abandoned his daughters and that terminating his parental rights would best serve the girls.  The father appeals.

But the father's efforts at contact were too little.  His newfound interest in parenting the daughters comes too late.  And termination is in the daughters' best interests.  So we affirm the district court.

I.

In February 2020, the father had his parental rights terminated over two minor children[1] from a past relationship.  There, it was proven the father abused

---

[1] Three of the father's minor children from a prior relationship were adjudicated in need of assistance due to the father's abuse, but one turned eighteen years old while the later termination proceedings were pending.

his children—striking them with belts, bamboo sticks, or fiberglass poles with metal tips; depriving them of food and water for days as punishment; punching them so hard they lost consciousness; and other cruel forms of discipline. The father refused to obtain mental-health or substance-use evaluations and disavowed counseling. He was ultimately declared "a high risk for continuing to behave in a violent and dangerous manner in his role as a parent," his parental rights were terminated, and he was placed on the child abuse registry.

Three months later, the father began a relationship with the mother—the father was 46 years old and the mother was 23 years old. The two quickly moved in together and their first daughter was born in June 2021. The mother received almost no prenatal care, nor did they take the daughter to the doctor after she was born for routine checkups. It appears the only medical care she received was a dental procedure when she was a few weeks old. And they never obtained a birth certificate for her.

While the daughter was very young, she was kept in a Rubbermaid plastic tub as a crib. At times, the mother would close the lid with the daughter inside and place a basket of toys on top so she could not get out. The father knew of this and did not intervene. And the father often left her to cry for hours on end. By fourteen months, the daughter had learned never to cry, even when she needed help.

The mother and father's relationship grew volatile, and they often fought in front of the daughter. In early August 2022, while eight months pregnant with their second daughter, the mother fled the relationship and returned to her parents' home. The father knew where the mother and his daughter were staying—he

dropped off some of the mother's items there the next week. Yet the father never tried to see his daughter.

Their second daughter was born in September. The father did not attend her birth. The younger daughter has lived with the mother's parents since birth and has never met the father.

The mother and father briefly reunited in Minnesota for one night in November. But their encounter turned violent—the father hit and strangled the mother—and a nearby hotel guest called the police. They returned to the mother's parents' home late the next evening, and the father asked to take his daughters. Because it was late, the girls were already asleep, and he did not have car seats, the father was told to come back the next day. He did not return the next day, nor did he ever again ask to see his daughters.

That evening was the only time the father ever asked to visit his daughters from August 2022 until the termination petition was filed in March 2023. And the father did not financially contribute toward his daughters' care during these seven months, despite having the means to do so.

After the Minnesota incident, the mother sought inpatient treatment. The mother then left the state,[2] leaving the maternal grandparents to care for the daughters. She ultimately released her custody of the daughters to counsel for the maternal grandparents, consenting to the termination of her parental rights. *See* Iowa Code §§ 600A.4, 600A.2(1). While the maternal grandparents love the girls, they are both retired and getting older, so they do not view themselves as viable

---

[2] Although the father never tried to visit his daughters, he once drove down to Florida to try to reconcile with the mother.

caregivers for the girls long term. The custodian thus wishes to facilitate the girls being adopted by younger parents.

In March 2023, the custodian petitioned to terminate both the mother and father's parental rights under Iowa Code chapter 600A (2023). The petition alleged the mother voluntarily relinquished her parental rights, the father abandoned his daughters, and termination is in the daughters' best interests. The court appointed a guardian ad litem, who recommended that termination would best serve the daughters.

After a two-day trial, the district court terminated both the mother and father's parental rights. The court first accepted the mother's consent to termination and found it to be in the daughters' best interests. Turning to the fighting issue of the father's abandonment, the court found the father failed to maintain "substantial and continuous or repeated contact with" his daughters. *See* Iowa Code § 600A.8(3)(b). The court found it significant that the father "has shown the willingness to spend time, energy, and money to travel to Florida and spend nearly a week pursuing [the mother] to reengage with him," yet "has made virtually no effort to try to reengage with his children." The court also emphasized the father's wholesale failure to communicate with the maternal grandparents. These failures, together with his lack of financial support, showed the father had abandoned his daughters.

The court next held that the daughters were best served by termination. Because the father refused to engage in services to improve his parenting, and his testimony showed a lack of accountability for his past abuses, the girls were unlikely to be safe in his care. Nor was the court confident that the father would

give the daughters the help they will need—particularly given his disavowal of professional counseling or mental health services. Finally, the court gave "considerable weight" to the guardian ad litem's recommendation as to the girls' best interests. And so, the court terminated the father's parental rights over his daughters, awarded temporary physical care to the maternal grandparents, and extended counsel's legal custody of the girls. The father appeals.

II.

On appeal, the father raises a smattering of grievances with the district court proceedings and presents them as discrete issues for us to resolve. One grievance we can dispose of quickly—he argues the Sixth Amendment to the United States Constitution entitled him to a jury trial. But he did not raise this issue below, nor does he offer any authority to support his argument, so the issue is both unpreserved and waived. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."); Iowa R. App. P. 6.903(2)(a)(8)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

His remaining grievances—whether witnesses were credible, whether evidence was overlooked, and whether the guardian ad litem's recommendation should have been followed—are fairly understood as challenging whether clear and convincing evidence supported the district court's finding that he abandoned his daughters and that termination is in the daughters' best interests. So those are the issues we consider.

Private actions to terminate parental rights are a two-step process. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). First, a petitioner must show "clear and convincing" evidence that one or more grounds for termination exists. Iowa Code § 600A.8. Second, the petitioner must prove that termination is in the children's best interests. *Id.* § 600A.1. We review these issues de novo, though we give weight to the district court's fact-finding and credibility determinations. *B.H.A.*, 938 N.W.2d at 232.

Starting with the first step, the district court relied on the statutory ground of abandonment under section 600A.8(3). That section provides that for a child who is at least six months old—like the daughters here—"a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child." Iowa Code § 600A.8(3)(b). And the petitioner can prove the lack of sufficient contact by showing the parent failed to make "contribution toward support of the child of a reasonable amount, according to the parent's means" or failed to maintain direct contact by either: (1) visiting monthly; (2) communicating regularly when unable to visit; or (3) "[o]penly living with" and "holding himself or herself out to be the parent of the child" during a six-month period in the year before the termination hearing. Iowa Code § 600A.8(3)(b)(1)–(3); *see also id.* § 600A.2(20) (defining abandonment generally).

The father does not seriously dispute his lack of contact between August 2022 and March 2023 termination petition. Indeed, the father succinctly described his parenting efforts at trial—"I have done nothing." Instead, he contends his absence is excusable because the maternal grandparents prevented him from visiting and regularly communicating with his daughters. *See* Iowa Code

§ 600A.8(3)(b)(1) (excusing failure to visit monthly when "prevented from doing so by the person having lawful custody of the child"); *In re R.G.*, No. 21-1744, 2022 WL 2160691, at *3–4 (Iowa Ct. App. June 15, 2022). But we find no evidence the father was barred from seeing, speaking with, or supporting the girls. The only time the father asked to see his daughters—the evening in November 2022—he was not outright refused but told to return the next morning when the girls awoke. The father chose to never return. And he only initiated contact (through counsel) after these termination proceedings began. So there is no support for his argument that he was barred from seeing his daughters or that efforts to contact them would have been futile. We thus find that there is clear and convincing evidence he abandoned both daughters.

Next considering the daughters' best interests, section 600A.1 directs us to decide "whether a parent has affirmatively assumed the duties of a parent." Iowa Code § 600A.1(2); *see also B.H.A.*, 938 N.W.2d at 232. In making this decision, we consider—among other factors—"the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." Iowa Code § 600A.1(2). "[B]orrow[ing] from the statutory best-interest framework outlined in Iowa Code chapter 232," we "give primary consideration to the child's safety" and the best placement to encourage their long-term nurturing and growth. *B.H.A.*, 938 N.W.2d at 232 (cleaned up). We likewise consider "the child's emotional and psychological health and the closeness of the parent–child bond." *Id.* (cleaned up). And because the children's wellbeing is our polestar, we will not delay security

and permanency "by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

On appeal, the father argues that the guardian ad litem was biased, the evidence suggesting he harmed his older daughter is flawed, and he has evolved since the 2020 termination action. We find none of these arguments convincing. First, the record shows the guardian ad litem was experienced and neutral. While the father disputes that he is a capable parent, that disagreement is not enough to render the guardian ad litem intolerably partial.

Second, the district court's safety concerns are well founded. When the older daughter left her father's care, she had no birth certificate and had never been to the doctor for a checkup. She was routinely sealed in a ventless storage tub. And she was ignored so often while crying she learned not to cry at all, even when she needed help—she was fourteen months old. This evidence, taken together with the father's prior findings of physically abusing his other children, shows the girls should not be returned to his care.

Relatedly, the father has not shown he has undergone the necessary work to improve his parenting. While we do not doubt the sincerity of the father's efforts to improve himself, we are not convinced that attending a "personal development retreat" and engaging in self-study are enough to dispel the substantial risk of harm identified in the 2020 termination action. The father continues to refuse to obtain mental health and substance-use evaluations—testifying he does not believe in "professional help"—or otherwise participate in parenting services from the department of health and human services. What's more, his self-study topics are

largely unrelated to parenting, and he only offered vague descriptions of how those materials improved his skills as a father. Given the degree of physical abuse in his prior termination case, his neglect of the older daughter, and his lack of accountability during trial on both these fronts, we agree with the district court that the daughters are best served by terminating his parental rights.

**AFFIRMED.**